UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| The Andersons Inc., | Case No. 2:25-cv-1118 |
| Plaintiff, | |
| | Judge Michael H. Watson |
| v. | |
| | Magistrate Judge Vascura |
| Sadot LLC, et al., | |
| Defendants. | |

## OPINION AND ORDER

The Andersons Inc. ("Plaintiff") moves for the Court to (1) enter default judgment on its claims against Sadot LLC ("Sadot") and Sadot Latam LLC ("Sadot Latam" and, together with Sadot, "Defendants"); and (2) not apply Federal Rule of Civil Procedure 62(a)'s automatic stay on enforcement of default judgment to this case. Mot., ECF No. 24. For the following reasons, the motion is **DENIED**.

### I. BACKGROUND

Plaintiff alleges that it entered into an agreement with Sadot (the "Agreement") in February 2025, wherein Plaintiff agreed to sell 15,000 metric tons ("mt") of Argentine Wheat (the "Cargo") at $253 per mt in exchange for Sadot's payment for the Cargo. Compl. ¶ 7, ECF No. 1; Mot., ECF No. 24. The total purchase price was $521,631.25. *Compl.* ¶ 7. A month later, the Cargo was loaded onto a vessel to be shipped to Sadot. *Id.* ¶ 8. The vessel departed a port in Argentina and arrived at a port in Ecuador. *Id.* ¶ 12. Because Sadot

allegedly had not paid for the Cargo, Plaintiff did not permit the Cargo to be discharged from the vessel. *Id.* ¶ 8. So, the Cargo remained on the vessel through May 2025, collecting $13,500.69 in demurrage charges.[1] *Id.*; Mot., ECF No. 24-1 at PAGEID # 71. According to Plaintiff, at some time in May 2025, Sadot lied to the vessel's owners and orchestrated the Cargo's discharge from the vessel without Plaintiff's authorization. Compl. ¶ 18, ECF No. 1. To date, Sadot has not paid Plaintiff for the Cargo or for the demurrage charges. *Id.* ¶ 19.

In addition, Plaintiff also alleges that Sadot Latam is Sadot's alter ego. *Id.* ¶ 20. According to Plaintiff, Sadot Latam is Sadot's subsidiary. *Id.* Though Plaintiff entered into other maritime contracts with Sadot for maritime transportation and the sale of corn, Sadot Latam paid Sadot's obligations under those contracts, which totaled $1.5 million. *Id.* Moreover, Plaintiff avers that Defendants share the same offices in Burleson, Texas; they share the same phone number; they are part of the conglomerate "Sadot Group Inc."; and Sadot shares its management with Sadot Group Inc. *Id.* ¶¶ 21–22.

Plaintiff filed its Complaint on September 26, 2025. Compl., ECF No. 1. Defendants were served on October 28, 2025. ECF Nos. 17–18. After Defendants failed to plead or otherwise defend as required by law, the Clerk

---

[1] "Demurrage" refers to "[l]iquidated damages owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by the agreed time." *Marquette Transp. Co., LLC v. Emerald Int'l Corp.*, No. 5:22-cv-24-BJB, 2025 WL 2642652, at *1 n.3 (W.D. Ky. Sept. 15, 2025) (citing *Liberty Mutual Ins. v. Royal White Cement, Inc.*, 769 F. Supp. 3d 513, 521 (E.D. La. 2025)).

entered default against them. ECF No. 22. Plaintiff now moves for default judgment on its breach-of-maritime-contract and maritime conversion tort claims and for a finding that Sadot Latam is Sadot's alter ego. Mot., ECF No. 24. In addition, Plaintiff requests that the Court not stay the proceedings to enforce the default judgment pursuant to Rule 62(a). *Id.* Defendants have not responded, and the deadline to do so has passed.

## II. STANDARD OF REVIEW

Applications for default judgment are governed by Federal Rule of Civil Procedure 55(b)(2). "Following the clerk's entry of default pursuant to . . . R[ule] 55(a) and the party's application for default under Rule 55(b), the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Wood v. Bronzie*, No. 1:20-cv-231, 2020 WL 4015247, at *1 (S.D. Ohio July 16, 2020) (internal quotation marks and citation omitted). "[T]he party moving for a default judgment must present some evidence of its damages." *Id.* (internal quotation marks and citation omitted). However, the Court need not hold an evidentiary hearing "if the Court can determine the amount of damages by computation from the record before it." *Id.* (citation omitted).

In addition, Federal Rule 62(a) provides that "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise." A court may consider setting aside the automatic stay under Rule 62(a) when there is a "risk that the judgment debtor's assets will be

dissipated" or "when the judgment does not involve a payment of money." *Calloway Cleaning & Restoration, Inc. v. Burer*, No. 1:22-cv-12, 2024 U.S. Dist. LEXIS 67307, at *2 (S.D. Ohio Apr. 12, 2024) (citing the Fed. R. Civ. P. 62(a) 2018 Advisory Committee Notes).

### III. ANALYSIS

#### A. Motion for Default Judgment

The Court has considered the Complaint, the motion for default judgment, and all attachments to the same. Because the Court concludes that Plaintiff has neither pleaded that Sadot Latam is Sadot's alter ego nor established maritime attachment as to Sadot, Plaintiff is not entitled to default judgment for its claims against Defendants.

#### 1. Alter Ego Theory

Generally, "a court pierces the corporate form to hold an individual [or corporation] responsible for acts done in the name of the corporation because the court finds that the individual [or corporation] and corporation are one and the same, no more than alter egos." *Williamson v. Recovery Ltd. P'ship*, No. 2:06-cv-292, 2011 WL 2181813, at *27 (S.D. Ohio Jun. 3, 2011) (citation omitted). In the context of admiralty veil-piercing situations, other federal courts have relied on factors such as:

> (1) common or overlapping stock ownership between parent and subsidiary; (2) common or overlapping directors and officers; (3) use of same corporate office; (4) inadequate capitalization of subsidiary; (5) financing of subsidiary by parent; (6) parent exists solely as holding company of subsidiaries; (7) parent's use of subsidiaries'

property and assets as its own; (8) informal intercorporate loan transactions; (9) incorporation of subsidiary caused by parent; (10) parent and subsidiary's filing of consolidated income tax returns; (11) decision-making for subsidiary by parent and principals;
(12) subsidiary's directors do not act independently in interest of subsidiary but in interest of parent; (13) contracts between parent and subsidiary that are more favorable to parent; (14) non-observance of formal legal requirements; (15) existence of fraud, wrongdoing or injustice to third parties.

*Id.* at *28 (citation omitted). Because piercing the veil is a highly fact-intensive inquiry, there is no set rule for how many of the above factors must be met to pierce the veil. *Id.*

Here, Plaintiff has not established that Sadot Latam is an alter ego of Sadot. Plaintiff asserts that Sadot Latam is a subsidiary of Sadot; they share office space and a phone number; Sadot Latam (the subsidiary) paid Sadot's (the parent's) contractual obligations for two maritime contracts with Plaintiff; and the companies share management. Compl. ¶¶ 20–22, ECF No. 1. But the Court hesitates to accept these allegations as true simply because Sadot Latam is in default. Indeed, Plaintiff fails to allege how Sadot and Sadot Latam are "one in the same"—for example, Plaintiff does not allege Sadot's use of Sadot Latam's assets. Nor does Plaintiff allege that Defendants had informal intercorporate loan transactions, consolidated income tax returns, or lack of independent director for decision-making. Thus, Plaintiff's motion for default judgment under an alter ego theory against Sadot Latam is **DENIED WITHOUT PREJUDICE**. Plaintiff may amend its Complaint **WITHIN THIRTY DAYS** of this Order as to whether Sadot Latam is the alter ego for Sadot, if it can do so in good faith.

### 2. Rule B Maritime Jurisdiction

Before the Court may enter default judgment against Sadot, it must consider personal jurisdiction over Sadot. Under the Supplemental Admiralty and Maritime Claims Rule B for In Personam Actions: Attachment and Garnishment ("Rule B"), "a plaintiff may obtain jurisdiction over a defendant by attaching its property." *Agric. & Energy Carriers LTD v. United Coals, Inc.*, No. 2:14-cv-434, 2015 U.S. Dist. LEXIS 16709, at *1–2 (S.D. Ohio Feb. 11, 2015) (citation omitted). "Rule B thus allows plaintiffs to maintain lawsuits which they otherwise could not, in that it allows 'quasi-in-rem jurisdiction over a defendant not otherwise subject to the court's jurisdiction . . . .'" *Id.* (citation omitted). "Rule B [further] requires a plaintiff seeking maritime attachment to provide notice to the defendant." *Id.* (citation omitted).

In its October 2025 Order, ECF No. 12, the Court determined that Plaintiff met the conditions required to invoke Rule B against both Defendants.[2] So, the Court issued a writ of attachment and garnishment, attaching Defendants' property within this District at Wells Fargo Bank, N.A. ("Wells Fargo"). *Id.* Subsequently, counsel for Plaintiff filed an affidavit of service of notice to Defendants. ECF Nos. 16, 19.

---

[2] The Court notes that Plaintiff's motion for issue of writs of maritime attachment and garnishment and proposed order of the same indicated that the Wells Fargo bank accounts were *Defendants'* property. ECF Nos. 5, 5-1. But the Complaint and motion for default judgment indicate that the Wells Fargo bank account belongs to only Sadot Latam. Compl. ¶ 20, ECF No. 1; Mot, ECF No. 24-1 at PAGEID # 70.

That said, given the Court's finding that Plaintiff has not pleaded that Sadot Latam is Sadot's alter ego, the Court is concerned that Plaintiff has failed to obtain personal jurisdiction over Sadot by attachment of *Sadot's* property (i.e., that Rule B jurisdiction has not been met for Sadot). According to Plaintiff, the Wells Fargo bank account that served as the basis for Rule B attachment belonged to Sadot Latam, not Sadot. Compl. ¶ 20, ECF No. 1. Moreover, Plaintiff does not allege that Sadot has any other property in this district to satisfy Rule B. *See generally id.* Because the Rule B requirements for maritime attachment seem to have not been met, Plaintiff's motion for default judgment against Sadot is **DENIED WITHOUT PREJUDICE**. Plaintiff may file a motion for writ of maritime garnishment or attachment against Sadot, or otherwise show cause as to why the Court has personal jurisdiction over Sadot such that it could enter a default judgment, **WITHIN THIRTY DAYS** of this Order.

### B. Motion for Rule 62(a) Automatic Stay

Finally, Plaintiff asks the Court to depart from the automatic stay imposed under Rule 62(a), essentially seeking immediate enforcement of the default judgment. Mot., ECF No. 24. Because the Court denied without prejudice Plaintiff's motion for default judgment, its motion as to the Rule 62(a) stay is **DENIED as moot**.

### IV. CONCLUSION

Plaintiff's motion for default judgment, ECF No. 24, is **DENIED WITHOUT PREJUDICE**. **WITHIN THIRTY DAYS** of this Order, Plaintiff may: (1) amend its

Complaint as to whether Sadot Latam is the alter ego for Sadot; and/or (2) file a motion for writ of maritime garnishment or attachment pursuant to Rule B against Sadot, or otherwise show cause as to personal jurisdiction.

Plaintiff's motion as to Rule 62(a) is **DENIED as moot**.

The Clerk shall terminate ECF No. 24.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
**UNITED STATES DISTRICT COURT**